KRAUSE *v.* MILLER.

1. BROKERS—PRINCIPAL AND AGENT—LIABILITY OF BROKER FOR UN-
AUTHORIZED FRAUDULENT ACTS OF AGENT—QUESTION FOR JURY.
How far a real estate broker is bound by or responsible
for the unauthorized and unknown false or fraudulent con-
duct of his agent in the sale of an equity in two lots, *held,*
upon the record, at least a question for the jury.[1]

2. SAME—FRAUD—BURDEN OF PROOF.
In an action against a broker for money paid upon the
purchase price of two lots, where plaintiffs claimed that
defendant's agent showed them the wrong ones, the burden
of proof is upon them to show that they had been fraudu-
lently induced to make the purchase in view of all the
attending circumstances, including the documentary evi-
dence, fair on its face, that plaintiffs had received the
lots purchased.[2]

3. SAME—DAMAGES MUST BE SHOWN—QUESTION FOR JURY.
In order to recover damages plaintiffs must show their
actual and necessary loss; the amount of money paid on
the lots not necessarily being the test, since they secured
a contract interest in lots of presumed and indicated
value, but their damages, if any, would be a question for
the jury.[3]

Error to Wayne; Moinet (Edward J.), J., presid-
ing. Submitted January 6, 1925. (Docket No. 23.)
Decided October 1, 1925.

Assumpsit by Herman Krause and another against
Frank P. Miller for money paid on a land contract.
Judgment for plaintiffs on a directed verdict. De-
fendant brings error. Reversed.

*Harry J. Weber* and *Albert McClatchey,* for appel-
lant.

[1]Brokers, 9 C. J. § 161; [2]Id., 9 C. J. § 161; [3]Id., 9 C. J. § 161.

STEERE, J.    Defendant is a real estate broker in the city of Detroit with his main office in the Free Press building and several branch offices in different parts of the city in charge of branch managers with salesmen under them.    One of the branch offices was located at the intersection of Grand River avenue and Plymouth road in charge of a branch manager named Canham, with a salesman working for or under him named Wenner.    Two men named Williams and Higgs were owners of a contract equity in two lots numbered 9 and 10 of B. E. Taylor's Detroit city subdivision of the south "½ of the N. W. ¼ of N. W. ½ of fractional section 28, T. 1 S., R. 11 E.," located north of Grand River avenue on the west side of Cherrylawn avenue. They had made Taylor several payments on the purchase price and, desiring to sell their interest in said lots, they had been listed for sale in defendant's Grand River branch office.    Plaintiff Herman Krause had lived in that vicinity just south of Grand River avenue for about two years and knew Wenner who, on March 16, 1920, solicited him to buy the lots.    Krause testified that Wenner had a plat of the property called Westlawn subdivision, and pointed out on it lots 9 and 10 as the lots he had for sale.    He then went with Krause over on Cherrylawn avenue and showed him as those lots two, marked 9 and 10, which proved to be in another subdivision "called Cherrylawn," also on the west side of Cherrylawn avenue, but much nearer to Grand River avenue.    Krause agreed to take the two lots and paid Wenner $25 down, taking the following receipt:

"FRANK P. MILLER,
"Builder, Investments, Real Estate,
Loans, Insurance, Rentals.
"Suite 708 Free Press Bldg.
"Detroit, Mich.
"March 16, 1920.
"Received of Mr. Krause, Address 3589 Ohio Blvd. Twenty-five dollars deposit on lot No. 9 and 10, sub-

division Cherrylawn avenue.     Subject to approval of home office.

"Price $2,700.    *   *   *

"FRANK P. MILLER,
"Per JNO. M. WENNER, Agent."

The sale was consummated the next day, Canham, defendant's branch manager, attending to the details. The land contracts for the lots from B. E. Taylor to Williams and Higgs duly assigned by them to the plaintiffs were delivered to Krause and he gave a check payable to them of $520.46 to cover the price for their equity in the lots, and the deal was closed.   On the covers of each of the contracts delivered to Krause the number of the lot and the following appeared in large black letters and figures:

"B. E. Taylor's Detroit City Subdivision, Herman and Ida Krause in account with B. E. Taylor 501-505 Ford Building, Detroit, Michigan."

On the next day Krause took the contracts to B. E. Taylor's real estate office when the following was added to each:

"We, the above named assignees, accept the above assignment and agree with B. E. Taylor to perform said contract.

(Signed)    "HERMAN KRAUSE, IDA KRAUSE,
address 3539 Ohio Boulevard.

"I hereby consent to the above assignment.

"B. E. TAYLOR, by R. L. S."

About ten months later, plaintiffs' attorney wrote a letter addressed to—

"Mr. FRANK P. MILLER,
"708 Free Press Bldg.,
"Detroit, Mich.
"Mr. JOHN M. WENNER,
"657 Bewick avenue,
"Detroit, Michigan.
"Mrs. JACQUETTA HIGGS,
"3220 Monica avenue,
"Detroit, Michigan.

"Mr. MAURICE E. WILLIAMS,
  "3220 Monica avenue,
  "Detroit, Mich.
  "Dear Sirs and Madam:"

Stating at length the transaction in substance as already related from the writings in evidence and Krause's testimony, saying further:

"That the lots pointed out were on Cherrylawn avenue, one block from Grand River avenue, whereas the lots which my clients now for the first time discover that they are buying are located several blocks from Grand River avenue, and are worth very little.

"Either Mr. John M. Wenner made a very careless mistake, and also a very serious one in pointing out the lots that he did to my clients or else he did so fraudulently, and in any event I believe that all of the parties to whom this is addressed are responsible to my clients for the mistake or fraud of Mr. Wenner.

"It appears that the lots he pointed out to my clients were lots No. 9 and No. 10 of Taylor's Westlawn subdivision. My clients have paid on this property $787.42 and do not propose to pay any more money as they think that the amount of money which they have already paid is more than the lots are worth, and they intend to hold you and each of you responsible for the repayment to them of the amount above stated. Therefore on their behalf I am tendering to each one of you an assignment of the lots in question upon the payment by you to my clients of the above mentioned sum, and in case you do not desire to avail yourself of this, my client will surrender the contracts to B. E. Taylor, and hold you responsible for the sum of money paid.

"Respectfully yours,"

Defendant denied any knowledge of this transaction until he was sued. His secretary, however, wrote plaintiffs' attorney acknowledging the communication and replying that they were unable to locate Wenner after extended effort and until they could do so they were in no position to discuss the matter. The attorney's letter is not shown to have been mailed to

any of the other parties to whom it is addressed and none of them are made parties to this action, neither were the contracts or an assignment of them ever tendered to Williams and Higgs, from whom he obtained them, nor otherwise than by that letter to defendant but he turned them over to Taylor, the original vendor, for what purpose is not made clear. No testimony was introduced as to the respective or comparative value of the lots involved here. The trial court directed a verdict in favor of plaintiffs for $787.42, being the total Krause testified he had paid for or on these contracts, and entered judgment thereon.

The principals in this deal were plaintiffs as vendees, and Williams and Higgs as vendors. There is no proof of any notice of rescission or tender back, or offer of restitution in any form, by the vendees to the vendors of those land contracts representing an interest in the property. Neither are made parties to this action. No claim is made that they had knowledge of anything irregular or dishonest in the transaction. Taylor was an innocent outsider to the deal who owned the fee title and at plaintiffs' request accepted them as assignees of the contracts on their signing them as such, and assuming the vendees' obligations. Defendant was Williams' and Higgs' agent to sell as a broker their interest in that property for a commission. He had no interest in the transaction beyond his commission and there is no proof or suggestion that he or his manager who attended to the details of the transfer had any knowledge or notice of any claim of anything dishonest or irregular in connection with it, until some ten months after the deal was closed. It may be conceded Wenner was agent of defendant Miller to find a purchaser, and could bind his principal within the scope of his agency. He was not, however, authorized to and did not close

the deal.     What passed between him and Krause was tentative and oral.     Just how far the principal in such a transaction as this is bound by or responsible for the unauthorized and unknown false or fraudulent conduct of his agent is a possibly pertinent question, upon which plaintiffs' counsel is silent.     We do not find it necessary to break that silence, except to note that upon the record before us it would at least be a question for the jury.     Plaintiffs' claim of false representation and inducement is based entirely on Krause's testimony as to what passed between him and Wenner. Krause had lived in that vicinity for some two years, knew there were several subdivisions platted around there, could read and write, had some experience in real estate transactions, knew he was dealing with these parties at arm's length, and testified more than once that Wenner showed him a plat of Westlawn subdivision and pointed out the two lots 9 and 10 of that subdivision as the lots he had for sale.     Those two lots in that subdivision were on Cherrylawn avenue.     He knew, or then learned, that Wenner was but a soliciting salesman who did not have any of the muniments of title or power to close the deal.     When they came to close the deal defendant's branch manager produced and gave him the contracts containing a full description of the property indorsed in large black letters with the name of the subdivision and title owner.     After he received the assigned contracts he took them to Taylor's office and secured his written consent to their assignment and assumed in writing the obligations of the contractees under them and thereafter made the periodical payments required by them to Taylor for nearly a year, having in his possession all the time the papers describing the property he was making payments on and receiving receipts for.     His only explanation is that he did not read the contracts or notice the indorsements on them and first learned of

the mistaken description in them when another party claimed the lots he thought he had bought.    Wenner was in defendant's employ for only about two months and when Krause first made his claim had left Detroit.

The burden of proof was upon plaintiffs to show by a preponderance of convincing testimony, against the plain documentary evidence fair on its face, that in view of all the attending circumstances they had in fact been fraudulently induced to make the purchase, and also to show in order to recover damages their actual and necessary loss.    The money Krause testified he had paid Williams and Higgs, and to Taylor his contractor in keeping up payments on the contracts, was not necessarily the test of his damages. He secured in the deal a contract interest in and right to two lots of presumed and indicated value, on the same street as those he claimed he bargained for but further away from Grand River avenue and of less value as he stated, how much less he does not show. If the question of damages was reached that also would be a question for the jury.

The judgment is reversed, with costs to defendant, and a new trial granted.

McDONALD, C. J., and CLARK, BIRD, SHARPE, MOORE, FELLOWS, and WIEST, JJ., concurred.